UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JEFFREY L. PELKEY,

           Petitioner,

      V.

R.A. GIRDICH,

           Respondent.

**REPORT AND RECOMMENDATION**

04-CV-300
(GTS /VEB)

---

## I. INTRODUCTION

Petitioner Jeffrey L. Pelkey, acting *pro se*, commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is an inmate at the Eastern Correctional Facility. In 2000, he was convicted in a New York State court of one count of third degree criminal possession of stolen property, two counts of second degree forgery, two counts of fourth degree criminal possession of stolen property, and one count of possession of burglar's tools. Petitioner contends that his sentence as a persistent felony offender was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 50).

## II. BACKGROUND

### A. Facts

The following factual summary is derived from the state court records. On

December 21, 1999, Petitioner stole a car from the parking lot of a store in Queensbury, New York. The car contained a wallet and credit cards, which Petitioner used several times before he was arrested.

Thereafter, during the morning of January 7, 2000, Petitioner drove the stolen car to a cement plant, where he broke into a truck and stole a checkbook from the glove compartment. Petitioner signed two of the checks over to himself and attempted to cash them at a nearby bank in Washington County. However, the teller noticed that the checks were not completed properly and questioned Petitioner. Petitioner then fled the bank, leaving behind the checks and his own driver's license. The teller called the police and Petitioner was pursued in the stolen car. Petitioner led the police on a high-speed chase through village streets. The chase ended in a collision with a parked car outside of Petitioner's apartment. Petitioner ran into his apartment, where he was arrested. Thereafter, Petitioner gave a written confession. (Docket No. 51 "Attachment #2" at 5-8).

A Washington County Grand Jury returned an indictment, which charged Petitioner with one count of Criminal Possession of Stolen Property in the Third Degree, in violation of New York Penal Law ("NYPL") § 165.50 (possession of a stolen car)[1]; two counts of Forgery in the Second Degree, in violation of NYPL § 170.10(1) (two stolen checks); two counts of Criminal Possession of Stolen Property in the Fourth Degree, in violation of NYPL § 165.45(2)(stolen credit cards); and one count of Possession of Burglar's Tools, in violation of NYPL § 140.35.

---

[1] Unless otherwise indicated, all references to the NYPL are to McKinney 1998.

### B. State Trial Court Proceedings

The Honorable Philip A. Berke, Washington County Court Judge, presided over Petitioner's trial proceedings. Petitioner was represented by Robert E. Kelly, Esq. After a hearing to determine the admissibility of Petitioner's post-arrest confession, the court orally denied Petitioner's motion to suppress the confession. (Docket No. 51 at "Attachment # 10" p. 55, 179-190 (5/30/00 transcript)). Petitioner's trial began on June 16, 2000, however, after jury selection and before evidence, Petitioner changed his plea to guilty of all charges in the indictment. On June 19, 2000, Judge Berke advised Petitioner of the maximum possible sentences he could receive, as well as the fact that Petitioner could be sentenced as a persistent felony offender. (Docket No. 51 at "Attachment # 10" p. 565, 568-569 (6/19/00 transcript)).

On August 8, 2000, Petitioner was sentenced as a persistent felony offender to five (5) concurrent terms of twenty (20) years to life in prison for his stolen property and forgery convictions, and to a concurrent, determinate one (1) year term for his possession of burglar's tools conviction. (Docket No. 51 at "Attachment #10" p.598-603 (8/8/00 transcript)). The court also ordered that the convictions run consecutively to Petitioner's previous sentence for second degree forgery imposed on February 18, 1999, in Warren County. (Id. at 603).

### C. State Appellate Proceedings

Petitioner, represented by appointed counsel Paul Robert Maher, Esq., appealed his conviction to the Appellate Division, Third Department, of the New York State Supreme Court. Petitioner, through counsel, asserted before the Appellate Division: (1) that his

punishment as a persistent felony offender violated the double jeopardy clauses of the state and federal constitutions; (2) that his plea was invalid because it lacked a clear admission of all the elements of the offenses to which he pled guilty; and (3) that police conduct at the time of his arrest violated his rights. (Docket No. 51 at Exhibit B). Petitioner also filed a supplemental *pro se* brief asserting that: (4) the evidence before the grand jury was legally insufficient; (5) that his persistent felony offender hearing was not conducted in accordance with CPL § 400.20; and (6) that Petitioner was impermissibly penalized for exercising his constitutional rights. (Docket No.51 at Exhibit C).

In a decision issued on May 9, 2002, the Appellate Division unanimously affirmed Petitioner's conviction. People v. Pelkey, 294 A.D.2d 669 (3d Dep't 2002). Petitioner's application for leave to appeal to the Court of Appeals was denied on October 8, 2002. People v.Pelkey, 98 N.Y.2d 771 (2002).

### D. Federal Habeas Corpus Proceedings

Petitioner, proceeding *pro se*, commenced this action on December 12, 2003, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1). In his Petition, Petitioner asserts two claims for habeas relief: (1) that the sentencing court violated CPL §400.20 and NYPL §70.10(2) when it did not adequately set forth on the record its reasons for sentencing Petitioner as a persistent felony offender; and (2) that his sentence as a persistent felon was unconstitutional pursuant to Apprendi v. New Jersey,[2] 530 U.S. 466 (2000), because his sentence was increased based upon facts not submitted

---

[2] In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490

4

to a jury or proven beyond a reasonable doubt.

On July 26, 2004, Petitioner made a motion to withdraw his petition so he could exhaust his remedies with respect to his Apprendi claim. (Docket No. 10). On August 31, 2004, Respondent filed a Response and memorandum of law in support of a stay so that Petitioner could exhaust his remedies without withdrawing his petition. (Docket Nos. 11, 12).

On November 10, 2004, the Honorable David N. Hurd, United States District Judge, stayed these proceedings to allow Petitioner to exhaust his remedies. (Docket No. 15). Petitioner then filed a motion in state court pursuant to CPL §440.20 to set aside his sentence, asserting that it violated Apprendi.

On October 15, 2004, the Washington County Court denied Petitioner's motion. (Docket No. 49 at "Exhibit D"). On March 2, 2006, the Appellate Division, Third Department affirmed the County Court's decision. People v. Pelkey, 27 A.D.3d 785 (3d Dep't 2006). On June 5, 2006, the Court of Appeals denied Petitioner's application for leave to appeal. People v. Pelkey, 7 N.Y.3d 761 (2006). On July 3, 2008, the Honorable George H. Lowe, United States Magistrate Judge, lifted the stay in this case (Docket No. 43), which was thereafter referred to this Court for a report and recommendation. (Docket No. 50).

For the reasons that follow, this Court recommends that the Petition for habeas corpus relief be DISMISSED.

### III. DISCUSSION

**A.     Federal Habeas Corpus Standard**

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C.

5

§ 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits." 28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001). The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted). The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA. Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), and AEDPA requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002). A presumption of correctness applies to findings by both state trial and appellate courts. Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the

phrases "contrary to" and "unreasonable application of" clearly established federal law. A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Id.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

### B. Petitioner's Claims

As set forth above, Petitioner asserts two claims in support of his request for habeas relief, both centering around his classification as a persistent felony offender. As such, this Court will first discuss New York's persistent felony offender statute.

#### 1. New York's Persistent Felony Offender Statute

New York's persistent felony offender statute defines a "persistent felony offender" as "a person, other than a persistent violent felony offender as defined in section 70.08, who stands convicted of a felony after having previously been convicted of two or more felonies," N.Y. Penal Law § 70.10(1). The statute further defines the circumstances under which a sentencing court may enhance the defendant's sentence, N.Y. Penal Law § 70.10(2). The second subsection provides as follows:

> When the court has found, pursuant to the provisions of the criminal procedure law, that a person is a persistent felony offender, and when it is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest, the court, in lieu of imposing the sentence of imprisonment authorized by section 70.00, 70.02, 70.04 or 70.06 for the crime of which such person presently stands convicted, may impose the sentence of imprisonment authorized by that section for a class A-I felony. In such event the reasons for the court's opinion shall be set forth in the record.

N.Y. Penal Law § 70.10(2).

In the present case, Petitioner contends that his sentence under New York's persistent felony offender statute was unconstitutional in light of Apprendi, and its progeny. In particular, Petitioner argues that his penalty was improperly enhanced based upon the judge's finding facts without proof beyond a reasonable doubt–namely, that the history and character and the nature and circumstances of his criminal conduct justified a finding of persistent felony offender.

In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. The Apprendi court held that it was unconstitutional to allow a judge to impose an enhanced sentence based upon the finding of a specific fact, unless that fact had been

8

determined by a jury through proof beyond a reasonable doubt. Id.

On June 24, 2002, the Supreme Court issued Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), which further considered the implications of Apprendi. In Ring, the court struck down Arizona's sentencing scheme, which allowed for the death penalty to be imposed if the sentencing court determined that certain "aggravating circumstances" were present.

The Supreme Court ruled that "[b]ecause Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' the Sixth Amendment requires that they be found by a jury." Id. at 609, 122 S.Ct. 2428 (quoting Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. 2348).

Thus, Ring clarified the holding of Apprendi and explained that a regime providing for enhanced sentences based upon the presence of several specified facts was unconstitutional unless those facts had been determined by a jury. Ring's holding was further developed in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), with the Supreme Court explaining that any additional fact-finding, even generalized findings, such as "substantial and compelling reasons justifying an exceptional sentence," require a determination by a jury prior to a sentencing enhancement. In United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), followed Blakely and applied its holding to the Federal Sentencing Guidelines.

In the present case, Petitioner's conviction became final on January 8, 2003, *i.e.*, ninety (90) days after the Court of Appeals denied his motion for leave to appeal on October 8, 2002. See People v. Pelkey, 98 N.Y.2d 771 (2002). As such, because Blakely and Booker were decided after that date, they are not relevant for purposes of deciding whether

Petitioner's sentence violated clearly established federal law as determined by the Supreme Court.

The Second Circuit has indicated that the relevant time for purposes of determining what constituted clearly established federal law is either "the time [the petitioner's] state-court conviction became final" or "the time of the relevant state-court decision." Brown v. Greiner, ("Brown I") 409 F.3d 523, 533 n. 3 (2d Cir.2005).

Under either standard, this Court's review of the merits of Petitioner's claims must be limited to Apprendi, Ring, and any preceding cases, but cannot include an analysis of subsequent decisions such as Blakely and Booker. See Brown I, 409 F.3d at 533 n.3 ("The universe of 'clearly established Federal law, as determined by the Supreme Court of the United States' for purposes of this appeal is therefore limited to Apprendi and the cases that preceded it."); Brown v. Miller, ("Brown II"), 451 F.3d 54, 57 (2d Cir. 2006) ("The question presented here is whether, in sentencing Brown as a persistent felony offender pursuant to New York Penal Law § 70.10, the state court unreasonably applied Ring and the cases that preceded it, as understood at the time.").

In Brown I and Brown II, the Second Circuit held that New York's persistent felony offender statute was not contrary to or an unreasonable application of federal law, as it existed after Apprendi and Ring, but before Blakely was decided.

As the Second Circuit explained in Brown II, "[b]oth Ring and Apprendi involved statutes that required judges to find specified facts (*i.e.*, judicial factfinding of the elements of the crime) in order to impose an enhanced sentence, not the kind of 'amorphous' determination required by New York's statute (*i.e.*, a determination of the appropriateness

10

of enhanced sentencings).” 451 F.3d at 59.[3]

The claims presented in this case fall squarely within the Second Circuit's decisions in Brown I and Brown II, which held that the persistent felony offender statute was not unconstitutional under clearly established federal law, as determined by the Supreme Court in Apprendi, Ring, and preceding cases.

As such, given the binding precedential authority with respect to this matter, this Court finds that Petitioner's claim that his enhanced sentence under the persistent felony offender statute was contrary to or an unreasonable application of clearly established federal law, as it existed at the relevant time, is plainly without merit. See, e.g., Woods v. Poole, No. CV-03-5708, 2007 WL 4166042, at *1 (E.D.N.Y. Nov. 19, 2007); Alston v. Woods, No. 04-CIV-8017, 2005 WL 3312818, at *4 (S.D.N.Y. Dec. 8, 2005); Francishelli v. Potter, No. 03-CV-6091, 2007 WL 776760, at *9 (E.D.N.Y. Nov. 19, 2007).

Accordingly, Petitioner's claims for relief based on Apprendi issues should be DISMISSED.

    **2.    Persistent Felony Offender Status**

Petitioner also asserts that the sentencing court failed, in violation of NYPL §70.10(2) and CPL §400.20, to place its reasons for sentencing on the record in violation of his rights.[4] Petitioner raised the issue of his sentencing as a persistent felony offender on direct appeal before the Appellate Division, which found that the sentencing court properly sentenced him as a persistent felony offender, especially in light of the fact that Petitioner "had five prior

---

[3]The New York Court of Appeals has also held that the persistent felony offender statute survives scrutiny under the Apprendi standard. See People v. Rivera, 5 N.Y.3d 61, 800 N.Y.S.2d 51, 833 N.E.2d 194 (2005); People v. Rosen, 96 N.Y.2d 329, 728 N.Y.S.2d 407, 752 N.E.2d 844 (2001).

[4]This is Petitioner's first ground for habeas relief. (Docket No. 1).

11

felony convictions and 17 prior misdemeanor convictions and was a career criminal with a history spanning at least 16 years. . .[his] parole had twice been revoked, he was in fact on parole at the time of his commission of the instant crimes, and no prior treatment programs or sentencing options had any apparent effect on his behavior." People v. Pelkey, 294 A.D.2d at 694.  The appeals court further noted that "County Court addressed all of the relevant factors for determining whether a persistent felony offender sentence was warranted." Id.

Therefore, because the Appellate Division made a finding on the merits with respect to this issue, in order to obtain habeas relief, it must be shown that the Appellate Division's decision was contrary to, or an unreasonable determination of the facts in light of, clearly established Supreme Court precedent.

A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. at 413.

To the extent that Petitioner bases his claim upon an alleged violation of New York law, such a claim is not cognizable on habeas review.  Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("It is not the province of a federal habeas court to reexamine state-court determination on state-law questions."); see also Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990).

In any event, Petitioner's assertion is belied by the record.  Petitioner's lengthy criminal history speaks for itself, rendering the reasons underlying the sentencing court's decision patently obvious.  Moreover, a review of the sentencing transcript reveals that the

court did, in fact, state its reasons for Petitioner's persistent felon status and sentencing.

> Let me make it clear to you, Mr. Kelly, that my finding that a Persistent Felony Offender sentence was warranted was based on the extensive criminal record, as I've made it clear, of Mr. Pelkey, the pattern of criminal behavior. I've indicated that - - - and this Court has been a judge for many years, and his record is probably one of the most extensive records that this Court has seen. [His] felony convictions . . . indicate a pattern that only a career criminal would have, and that concerns me very much. And that's the basis of my determination for felony offender status determination [sic] and to have Mr. Pelkey sentenced as such.

(Docket No. 51 at "Attachment # 10" p. 595-596 (8/8/00 Transcript)). Accordingly, Petitioner's claim for habeas relief on this basis should be DENIED.

## IV. CONCLUSION

For the reasons stated above, the Court recommends Jeffrey L. Pelkey's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and that the Petition be dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue. See 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:    January 5, 2009

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

January 5, 2009

_____
Victor E. Bianchini
United States Magistrate Judge